*C. F. McNutt* and *A. Ennis*, for appellant.

*W. R. Harrison* and *W. S. Shirley*, for appellee.

---

## JONES *v.* BRADFORD and Another.

PLEADING.—A demurrer only reaches such defects as are apparent on the face of the pleading to which it is directed.

SURETIES.—CONTRIBUTION.—Where, in an action by a surety against a co-surety for contribution, it appears that the debt was paid by the transfer of land, the price at which the land was taken by the creditor will ordinarily constitute the proper basis for a calculation of the amount due from the co-surety, but in any event the value of the land at the time, without reference to its cost, not exceeding the amount of the debt, should be allowed.

PRACTICE.—The Supreme Court will not reverse a case upon a mere preponderance of the evidence.

APPEAL from the *Grant* Common Pleas.

ELLIOTT, J.—*Jones*, the appellant, *Bradford* and *Brownlee*, the appellees, and one *Kelly*, were the sureties of *A. J. Harlan* on a promissory note for $4,000, to *Spears, Case & Co.*, executed on the 3d of *September*, 1858, and payable *January* 10th, 1859, with interest from date. This suit is brought by *Bradford* and *Brownlee*, two of the sureties, against *Jones*, a co-surety, for contribution. The complaint alleges, *inter alia*, that *Harlan*, the principal, without having paid the amount due on the note, became insolvent, and

that the plaintiffs have fully paid the same to *Spears, Case & Co.;* that *Kelly* has contributed one-fourth of the amount so paid, and prays judgment against *Jones* for one-fourth of the whole amount, with interest. A demurrer was filed to the complaint, which the court overruled. *Jones* then answered: 1st. The general denial. 2d. Accord and satisfaction. 3d. Payment generally. 4th. Payment by *Harlan* to *Spears, Case & Co.* of one-half of said note, and that said *Jones* had paid to the plaintiffs in this suit, by conveying to them sixty-eight acres of land in *Iowa,* forty acres of land in *Grant* county, *Indiana,* and $100 in cash, more than the amount for which he is liable to said plaintiffs. Replication in denial of the 2d, 3d and 4th paragraphs of the answer. Trial by jury; verdict for the plaintiffs for $458 40. Motion for a new trial and in arrest of judgment overruled, and judgment on the verdict. *Jones* appeals.

The appellant insists that the court erred in overruling the demurrer to the complaint. By a bill of exceptions filed after the close of the trial, it appears that the suit was originally brought by *Bradford* alone, alleging that he had purchased the interest of *Brownlee* in the claim against *Jones,* and presenting a written assignment from *Brownlee* to him of said interest. *Brownlee,* who was made a party defendant to answer as to the assignment, answered admitting the assignment and disclaiming any interest in the subject matter of the suit. At a subsequent term of the court, a new complaint was filed in the name of *Bradford* and *Brownlee* as plaintiffs, in which no reference is made to the assignment of the interest of *Brownlee* to *Bradford.* And this is the complaint to which the demurrer was overruled.

The complaint shows that both the plaintiffs were interested in the cause of action, and also shows a legal liability by the defendant. But it is insisted that by making the pleadings prior to the last complaint a part of the record by the bill of exceptions, the record thereby shows that *Brownlee* had no interest in the cause of action, and

that the demurrer should, therefore, have been sustained. This position cannot be sustained.. The bill of exceptions did not make the original pleadings demurred to a part of the complaint, and an objection to the complaint can only be reached by demurrer when the objection appears on the face of the complaint, and when it does not so appear it must be taken by answer. 2 G. & H., § 54, p. 81.

The next question presented arises upon the refusal of the court to grant a new trial. One of the reasons presented for a new trial is error of the court in giving certain instructions to the jury, and in refusing to give certain instructions asked by the defendant. We have carefully examined the instructions given, as well as those refused. We think those given by the court contain a proper exposition of the law of the case as applied to the issues, and the evidence given to the jury, and presented the law of the case fully and fairly. The instructions refused, so far as they contained a correct enunciation of the law, were fully covered by the general charge of the court, and were therefore properly refused. The instructions given and refused are numerous, and many of them lengthy; the copying of them into this opinion would only extend it unnecessarily without serving any beneficial purpose, we therefore omit them.

It is also urged that the damages are excessive, and that the verdict is not sustained by the evidence. The claim that the damages are excessive is based upon a misapprehension of the law. The evidence shows that *Harlan*, the principal in the note, mortgaged certain lands to *Spears, Case & Co.* to secure, in part, the amount due on the note, which he estimated to be worth from $2,600 to $3,000. He was about to leave the country, and at the same time executed to the payees of the note a deed for the same lands, and placed it in the hands of *Brownlee*, one of the plaintiffs, claiming that he ought to be allowed on the amount due by the note at least $2,600. In *August*, 1861, *Spears, Case & Co.* agreed to receive in payment of the note certain lands

designated, of which those conveyed by *Harlan* formed a part, and which they proposed to take at the sum of $1,640; the plaintiffs to pay the residue of the note in other lands at $2 26 an acre. The deeds were executed and delivered to *Spears, Case & Co.*, who were to surrender the note to the plaintiffs on condition that they ascertained that the titles to the lands were all valid. They subsequently ascertained that a forty acre tract of the land, in *Grant* county, conveyed by *Harlan*, for which they were to allow the sum of $600, had been previously mortgaged to the sinking fund, and in default of the payment of the sum for which it was so mortgaged had been sold and conveyed to another person, and they then refused to surrender the note until the plaintiffs paid said sum of $600, which they subsequently did, and *Spears, Case & Co.* then surrendered to them the note. By the failure of the title to the forty acre tract, the land conveyed by *Harlan* only paid on the note $1,040, leaving, at the time the deeds were delivered to *Spears, Case & Co.*, in 1861, the sum of $3,680, including interest, which the plaintiffs paid in other lands at $2 26 per acre, except those conveyed for the $600, in lieu of the forty acre tract. The lands estimated at $2 26 an acre did not cost the plaintiffs that sum, and though the evidence shows that they were worth at least that sum per acre at the time they were conveyed in payment of the note, it is insisted by the defendant that in estimating the amount paid by the plaintiffs to *Spears, Case & Co.*, for the purpose of fixing the amount of the defendant's liability in this suit, the lands should be estimated at what they cost the plaintiffs, and not at their actual value when conveyed to *Spears, Case & Co.*, nor at the amount for which they were so received in payment by the latter. The price at which the lands were received in payment would, we think, ordinarily constitute the proper rule in such cases. If they were taken on a compromise of a doubtful claim, or from parties of doubtful solvency, at a price greatly above their value, perhaps the amount upon which contribution by a co-surety would be estimated,

would be the actual value of the lands. The lands were the plaintiffs', and without regard to their cost, they were clearly entitled to the increase in their value, or the legitimate profits made by their purchase, not, however, exceeding the amount paid by them on the debt for which the defendant was liable.

*Jones* conveyed to the plaintiffs two tracts of land, and gave them his note for $100, which he subsequently paid, and insists that the lands and note were received by the plaintiffs in satisfaction of his liability to them, by reason of the amount paid by them on the note to *Spears, Case & Co..* And it is claimed that the evidence clearly preponderates on that question in his favor. We have examined the evidence, and find that it is directly conflicting. *Jones* testifies that the lands and note were received by the plaintiffs in satisfaction of their claim. *Bradford,* who transacted the matter for the plaintiffs, testifies that they were received in payment at their value, but not in satisfaction of the whole claim. Both parties are to some extent corroborated by other evidence. We do not know but that, sitting as a jury on the trial below, we should have arrived at the same conclusion reached by the jury. But it is too well settled by repeated decisions of this court to require a reference to them, that we cannot examine the evidence for the purpose of determining the case upon a mere preponderance. To do so would be to usurp the province of the jury, without the opportunity of judging of the credibility of the witnesses, by the many tests which their presence on the witness stand affords.

There is nothing in the motion in arrest. The complaint, as we have seen, shows a valid cause of action against the defendants.

The judgment is affirmed, with five per cent. damages and costs.

*A. Steele, R. T. St. John* and *M. L. Marsh,* for appellant.

*J. Brownlee,* for appellees.